Norberto SERRANO, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL
BOARD (CHAIN BIKE CORPORA-
TION and Aetna Casualty & Surety),
Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 1998.

Decided Sept. 29, 1998.

Thomas D. Aristide, Bethlehem, for petitioner.

Wilbur C. Creveling, Jr., Allentown, for respondent, Chain Bike Corp.

Before FLAHERTY and LEADBETTER, JJ., and NARICK, Senior Judge.

FLAHERTY, Judge.

Norberto Serrano (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed an order of Workers' Compensation Judge Dietrich (WCJ) that suspended the benefits of Claimant effective August 8, 1993. We affirm.

This is the third time this case comes before this Court. It has a long, complex procedural and factual history. This Court's most recent opinion in this matter nicely summarizes the history of this case. In *Serrano v. Workmen's Compensation Appeal Board (Chain Bike Corporation)*, (No. 1491 C.D.1992, filed January 22, 1993) (*Serrano II*), this Court recited the history as follows:

> Claimant was employed as a foreman on the rim line for Chain Bike Corporation (Employer), a bicycle manufacturer. While in the course of employment on March 2, 1982, Claimant sustained a compensable injury when he was squeezed or pinched between two machines he mistakenly thought were turned off. Claimant suffered internal injuries to his chest and stomach including a lacerated liver, lacer-

ated gall bladder and contusions of the lung and chest wall resulting in a collapsed lung. Claimant's gall bladder was removed and his liver was surgically repaired. On March 12, 1982, Claimant was discharged from the hospital. Pursuant to a notice of compensation payable, dated March 17, 1982, Claimant was awarded $262.33 in weekly benefits for "stomach injuries."

David Shingles, M.D. (Dr. Shingles), a general practitioner, initially treated Claimant on March 26, 1982, after his first operation. On April 2, 1982, Claimant first notified Dr. Shingles that he was experiencing lower back pain. Claimant was again examined by various doctors in May and July 1982. Claimant was hospitalized from July 26–30, 1982, at which time he was discharged with a final diagnosis of chronic lower back strain. From March 30, 1983, to April 5, 1983, Claimant was again hospitalized for lower back pain, which frequently extended downward through his legs. At that time Claimant underwent surgery wherein several fragments of disc were removed from his lower back.

On July 7, 1983, at the request of Employer, Claimant was examined by Alfons J. Muller, M.D. (Dr. Muller), who subsequently prepared reports and an affidavit of recovery stating that Claimant was able to resume his time-of-injury occupation of foreman-mechanic without limitations as of July 22, 1983. On or about August 1, 1983, Claimant appeared at Employer's office and was given the opportunity to review Dr. Muller's conclusions. Claimant was advised by Employer that his pre-injury position was available to him. However, Claimant did not feel he could return to work because he was taking several medications, and in fact he has never returned to his pre-injury position.

Subsequent to the meeting with Employer, Claimant continued to complain of severe lower back pain and began experiencing severe psychological problems. On the advice of counsel, Claimant began seeing Richard J. Miller, Ph.D. (Dr. Miller), a clinical psychologist. Dr. Miller treated

Claimant on a weekly basis from August 16, 1983, until at least March 11, 1986. Dr. Miller opined that Claimant suffered from chronic post-traumatic stress disorder with acute depression. Further, Dr. Miller opined that Claimant was experiencing a psychophysiologic reaction resulting from organic musculoskeletal type pain.

In addition to his psychological problems, Claimant was hospitalized several times for continued back problems. In December of 1984 Claimant was hospitalized at the University of Pennsylvania Medical Center in Philadelphia, at which time further tests were performed on his back. Claimant was diagnosed by Ronald J. Wisneski, M.D. (Dr. Wisneski), as suffering from arachnoiditis and several disc herniations at various levels of his spinal column. Claimant subsequently underwent two back operations in May 1985, in an attempt to correct these injuries. Claimant continued to complain of intermittent severe lower back pain after the May 1985, operations.

Earlier, on August 9, 1983, employer filed a petition for termination, suspension or modification of compensation payable to Claimant on the grounds that Claimant was offered a position commencing on August 8, 1983, which was within his limitations and without any loss or decrease of earnings. In its petition, Employer also requested a supersedeas, which the referee granted on October 21, 1983, suspending payments as of August 8, 1983. As discussed herein, the referee found, on the basis of Dr. Muller's testimony, that Claimant was no longer disabled from either an abdominal or back condition and that he was able to return to his pre-injury position. The referee also found that such an offer was made to Claimant and that Claimant refused to return to work. Consequently, the referee granted Employer's petition and suspended Claimant's benefits as of August 8, 1983. The Board affirmed and Claimant appealed to this Court.

In *Serrano v. Workmen's Compensation Appeal Board (Chain Bike Corporation)* (*Serrano I* ), 123 Pa.Commonwealth Ct. 220, 553 A.2d 1025 (1989), Claimant presented three issues for our review. First,

Claimant contended that the referee erred in disregarding the opinion of Dr. Miller, a clinical psychologist, because he was not a medical doctor. Second, Claimant contended that the referee erred in holding that Employer had proved by competent unequivocal medical evidence that Claimant's disability had ended and also that Employer failed to present evidence that the psychogenic and drug dependency aspect of Claimant's disability had ended. Third, Claimant contended that the referee erred in concluding that Claimant's pre-injury position was available and was offered to Claimant. However, in *Serrano I,* we only addressed the issue of whether the testimony of Dr. Miller, a clinical psychologist was incompetent under Section 422 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834, which requires that all findings of fact must be based on sufficient competent evidence. In *Serrano I,* we concluded that the testimony of a clinical psychologist may constitute unequivocal evidence of a mental illness and remanded the case for consideration of Dr. Miller's testimony. *Id.* at 225, 553 A.2d at 1027.

Upon remand, Referee Philip H. Williams reviewed Referee Harry C. Shayhorn's March 27, 1987, decision and deleted the last five lines of Finding of Fact (F.F.) No. 27, which noted that Dr. Miller was not a physician and thereby incompetent to testify. Referee Williams' decision, January 16, 1991, at 2–3. Referee Williams also added F.F. No. 28, which states, "The Referee after considering the testimony of Richard J. Miller Ph.D. rejects same as unpersuasive and unconvincing." *Id.* Consequently, Referee Williams suspended Claimant's compensation effective August 8, 1983. The Board affirmed and Claimant again appeals.

On this appeal [in *Serrano II],* Claimant contend[ed] that Referee Williams erred in concluding that no changes in F.F. Nos. 1–26 of Referee Shayhorn's decision were needed; that Referee Williams erred in finding the testimony of Dr. Muller to be persuasive and that Claimant recovered by

July 7, 1983; that Referee Williams' F.F. No. 28 rejection of Dr. Miller's testimony was arbitrary and capricious; that Referee Williams erred in concluding that no change is required in Referee Shayhorn's Conclusions of Law (C.L.) Nos. 1–4; and that Referee Williams' C.L. No. 3 inaccurately assesses the testimony of Dr. Singles, Dr. Wisneski, and Dr. Miller.

*Serrano II,* slip op. at 1–5. In *Serrano II,* this Court again ordered a remand. In doing so, this Court noted that Claimant argued that his lower back problems occurring after August 8, 1983 (the date whereon his benefits were suspended) were causally related to his work injury. This Court further noted that Dr. Muller had testified that notwithstanding these lower back problems, Claimant was still able to return to work after Claimant's back-related hospitalizations on August 17, 1983 and December 9, 1983. However, this Court observed that Claimant was again hospitalized on December 17, 1984 for back surgery by Dr. Wisneski. The Court reasoned that because there was no evidence from Employer addressing this period of hospitalization, it was necessary to remand this case yet again "for a determination of whether Claimant's treatment by Dr. Wisneski was related to his March 2, 1982, injury, thereby entitling him to a modification of the suspension of his benefits while under Dr. Wisneski's care." *Serrano II,* slip op. at p. 11.

Upon remand of this matter after *Serrano II,* WCJ Dietrich reconfirmed and republished WCJ Shayhorn's Findings of Fact Nos. 1–26, and WCJ Williams' Findings of Fact Nos. 27 and 28. WCJ Dietrich thereafter made four additional Findings of Fact, numbered 29–32. These findings of fact amount to a rejection of Dr. Wisneski's testimony regarding, inter alia, the relationship between Claimant's back problems in December 1984 and his work injury of March 2, 1982, as being "unpersuasive and unconvincing." The Board affirmed. This petition for review followed.

In this current appeal, Claimant raises the following issues for our consideration:

1) Whether the "capricious disregard of the evidence" test or the "substantial evidence" test applies in this Court's review of the WCJ?

2) Did the WCJ issue a reasoned decision in this case where he simply rejected the testimony of Dr. Wisneski as being "unpersuasive and unconvincing"?

3) Did the WCJ err in focusing upon causation in violation of the remand directions from this Court?

4) Is there any discernible basis for the WCJ's rejection of Dr. Wisneski's uncontradicted medical evidence?

*See* Claimant's brief at p. 3.

Initially, Claimant argues that the appropriate scope of review is capricious disregard of the evidence. Upon remand of this case by *Serrano II,* neither party presented additional testimony to the WCJ. Claimant chose to simply stand on the testimony already provided by Dr. Wisneski in the hearing held before WCJ Shayhorn. The WCJ rejected Employer's request to re-depose Dr. Muller; thus Employer did not present any additional evidence either. Claimant asserts that, because Dr. Wisneski's testimony concerning Claimant's treatment and condition after December 14, 1984 was not contradicted by any of Employer's evidence or even addressed by Employer's evidence, the capricious disregard scope applies herein. We disagree.

▆▆▆ The capricious disregard scope of review applies only where the party with the burden of proof loses before the factfinder and the opposing party has not presented any evidence. *Hall v. Workmen's Compensation Appeal Board (Mt. Braddock Land Co.),* 142 Pa.Cmwlth. 341, 597 A.2d 265 (Pa. Cmwlth.1991).[1] Here, upon remand after *Serrano II,* neither party presented any further evidence; however, WCJ Dietrich considered the record already made previously by the parties. That record included the

---

1. Here, Claimant concedes that upon remand after *Serrano II,* he had the burden below to prove that his suspension should be modified, and the Employer does not contend otherwise. Thus, it is not disputed that Claimant was the party with the burden before the factfinder and that he lost. Hence, the only issue is whether both parties presented evidence or whether only Claimant presented evidence so as to render the capricious disregard scope the appropriate test.

medical evidence adduced by both the Employer and the Claimant. While it may be true that the Employer's experts did not specifically contradict the testimony of Claimant's expert regarding the period after December 14, 1984, it is not true that Claimant was the **only** party to present medical evidence in this case as is required for the capricious disregard scope of review to apply. Because both the Employer and the Claimant presented medical evidence, the substantial evidence test is the appropriate one to be applied herein. Accordingly, our review in this matter is limited to determining whether constitutional rights were violated, an error of law was committed or whether substantial evidence supports the WCJ's necessary factual findings. *Roadway Express, Inc. v. Workers' Compensation Appeal Board (Siekierka)*, 708 A.2d 132 (Pa.Cmwlth.1998).

■ Next, Claimant argues that WCJ Dietrich failed to issue a reasoned decision within the meaning of Section 422(a) of the Workers' Compensation Act (Act), 77 P.S. § 834.[2] Claimant asserts that because WCJ Dietrich simply stated that he rejected Dr. Wisneski's testimony as being unpersuasive and unconvincing and Dr. Wisneski's testimony was uncontradicted, the WCJ transgressed the requirement for a reasoned decision. The general rule is that a WCJ is not required to explain the basis for a credibility determination. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995) (en banc), and Claimant concedes as much: "[i]t is acknowledged that generally a referee [sic] is not required to explain the basis for a credibility determination." (Claimant's brief at 17). However, Claimant argues that because here, unlike in *Greenwich Collieries*, the testimony of Dr. Wisneski was uncontradicted, WCJ Dietrich should have been required to explain why he found such uncontradicted testimony not credible. We note initially that a WCJ is the sole arbiter of credibility. *Martinez v. Workmen's Compensation Appeal Board (Container Corp. of America)*, 676 A.2d 751 (Pa.Cmwlth.1996).

As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted expert testimony. *Werner v. Workmen's Compensation Appeal Board (Bernardi Brothers, Inc.)*, 102 Pa.Cmwlth. 463, 518 A.2d 892 (Pa.Cmwlth. 1986). Thus, it is of no great significance that Dr. Wisneski's testimony is uncontradicted for purposes of the WCJ being free to reject it as not credible or not persuasive.

■ Even so, Claimant cites to *Lowery v. Pittsburgh Coal Company*, 427 Pa. 576, 235 A.2d 805 (1967), and *Beth–Allen Ladder Co. v. Workmen's Compensation Appeal Board (Mills)*, 53 Pa.Cmwlth. 323, 417 A.2d 854 (Pa.Cmwlth.1980), as requiring a reversal herein. However, in *Lowery*, the Court found that the factfinder's rejection on credibility grounds of uncontradicted testimony which was substantiated by another disinterested witness was without adequate explanation so as to have rendered effective judicial review impossible. Unlike in *Lowery*, here we do not find that WCJ Dietrich's rejection of that testimony as unpersuasive within the context of the extensive findings of fact and conclusions of law made by the two previous WCJ's rendered our review of this matter impossible. Accordingly, *Lowery* does not require a reversal herein. *See, e.g., Victor's Jewelers. v. Workmen's Compensation Appeal Board (Bergelson)*, 145 Pa.Cmwlth. 630, 604 A.2d 1127, 1128 n.2 (Pa.Cmwlth.1992) (distinguishing *Lowery* from the case under consideration there on the grounds that the language used by the Board in *Lowery* was "far removed" from the language the Board used in the case then at hand).

Neither does *Beth–Allen Ladder* require a reversal herein. First, in that case, the issue was not whether the WCJ issued a reasoned decision as is the issue herein. In fact the reasoned decision requirement of Section 422(a) had not even been enacted at the time of the decision in *Beth–Allen Ladder* which was 1980.[3] Thus, *Beth–Allen Ladder* is of little, if any assistance in enlightening us as to whether WCJ Dietrich's decision comports with the reasoned decision requirement of

---

2. Act of June 2, 1915, P.L. 736, *as amended*.

3. It was not until 1993 when Section 422(a) was amended to even include the reasoned decision requirement.

Section 422(a). Second, *Beth–Allen Ladder* applied a capricious disregard test in evaluating the adequacy of the testimony and the correctness of the WCJ's determination therein, whereas here, we have already determined that the proper test is the substantial evidence test. Accordingly, *Beth–Allen Ladder* does not control here. Thus, we find that WCJ Dietrich's decision complied with the reasoned decision requirements of Section 422(a) of the Act, 77 P.S. § 834, and that neither *Lowery* nor *Beth–Allen Ladder* compels a different result herein.

Next, Claimant argues that the Board and the WCJ both erred in focusing solely upon the causal connection between the lower back problems in December of 1984 and the work injury of 1982. Claimant argues that because his benefits were merely suspended, his disability is presumed to continue and the proper focus of the inquiry should have been whether that presumptively continuing disability now adversely affects his earning power again. (Claimant's brief at 19). Claimant asserts that by solely focusing on the causation issue other issues have gone unaddressed. However, while it is true that there is a presumption in suspension cases that the physical disability continues, it is not presumed that the physical disability caused by the work-related injury is the cause of his present loss of earnings. *See Pieper v. Ametek–Thermox Instruments,* 526 Pa. 25, 584 A.2d 301 (1990). In order for a claimant to merit the modification of a suspension of benefits he must prove two things: "[f]irst, he must prove that through no fault of his own his earning power is once again adversely affected by his disability[,][a]nd [s]econd, that the disability which gave rise to his original claim, in fact continues." *Pieper,* 526 Pa. at 35, 584 A.2d at 305. Here, in *Serrano II,* we specifically remanded this case "for a determination of whether Claimant's treatment by Dr. Wisneski was related to his March 2, 1982, injury" *Serrano II* slip op. at 11. In other words, we remanded for a determination of whether Claimant met his burden to prove that the physical disability which gave rise to his original claim continues to be the cause of his back troubles in December 1984. Thus, the WCJ and Board did not err in focusing on this question of the causal link between the presumptively continuing physical disability stemming from the March 1982 work-related injury and the Claimant's back troubles occurring in December 1984. Accordingly, this issue does not afford Claimant relief.

Next, Claimant argues that there is no evidence supporting a finding that Claimant's benefits should not be reinstated. Claimant asserts that there is abundant evidence of record to support a finding in his favor. While it may be true that there is evidence of record, which, if believed, could support a finding in his favor, there is also sufficient evidence of record that supports a contrary finding. *See generally* Dr. Muller's Deposition, R.R. at 336(a)–381(a). Thus, there is substantial evidence supporting the WCJs' determinations. In addition, we do not find any inconsistencies between the findings of fact and conclusions of law made by the two WCJs preceding WCJ Dietrich and WCJ Dietrich's findings of fact and conclusions of law as Claimant argues. It is entirely consistent to find that a physical disability may exist at one time period such that it effects the earning power of a given individual and that at some later time period, the physical disability no longer has such an effect. Accordingly, this issue does not afford Claimant any relief.

Accordingly, the order of the Board is affirmed.

### ORDER

NOW, September 29, 1998, the order of the Workers' Compensation Appeal Board dated February 5, 1998, at No. A94–1056, is hereby affirmed.