# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susette Vandunk,                             :
               Petitioner      :
                                             :
         v.                       : No. 996 C.D. 2017
                                             : Submitted: November 22, 2017
Workers' Compensation Appeal                 :
Board (School District of                    :
Philadelphia),                               :
               Respondent     :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI           FILED: December 27, 2017


      Susette Vandunk (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming that portion of the Workers' Compensation Judge's (WCJ) decision finding Claimant fully recovered from her physical injuries and that she did not suffer disabling psychological injuries. For the following reasons, we affirm.

**I.**[1]

Claimant worked for the School District of Philadelphia (Employer) as a teacher at West Philadelphia High School for 13 years. On January 29, 2015, she filed a claim petition for total disability benefits, alleging that on January 7, 2015, she sustained face, neck and psychological injuries when she was struck in the face by a student while teaching a class.[2] While Employer ultimately issued a medical-only notice of compensation payable for those listed injuries, it "issued a Notice of Compensation Denial asserting that Claimant did not suffer wage loss as a result of said injury and that the 'extent of liability/disability is contested.'" (Certified Record (C.R.) Item No. 4.) On October 31, 2015, Claimant also filed a review petition alleging that she sustained an "unsightly disfigurement . . . developed as a result of the January 7, 2015 work injury," which Employer denied. (C.R. Item No. 2.)

**II.**

Before the WCJ, Claimant testified:

---

[1] Because the Certified Record and the Reproduced Record do not contain the claim petition or the penalty petition or any of the Employer's responsive documents, we must rely on those procedural facts as set forth in the WCJ's and Board's decisions.

[2] Claimant also concurrently filed a penalty petition, which the WCJ denied, concluding:

> While Employer appears to have filed the [Temporary Notice of Compensation Payable], the first acknowledgment of the work injury, twenty-one days after the injury as opposed to twenty, this Judge does not find that Employer's actions arise to the level of a penalty. Employer properly acknowledged the work injury and later issued a denial when contesting ongoing disability.

(Reproduced Record (R.R.) at 21a.) Claimant did not appeal this portion of the WCJ's decision.

On January 7th [2015] I was in the English Four classroom with another teacher; we co-teach together. And the students had an assignment on laptops where they were typing up the assignment. And I was walking through the classroom, saving the assignments on my flash drive so they could be printed. While helping a student, Kaleel Jenkins decided to get up and walk to the laptop cart and put the laptop in and take out his ID. And I saw this through my peripheral vision.

* * *

So I said to him if anything's missing out of that laptop cart I'm going to hold you responsible. So he says to me, excuse my language, Your Honor, ["]who the fuck are you talking to? I'm not no nigger on the street. I'll fucking knock you out.["] And I'm like ["]really, Kaleel? You know you're not supposed to go in the laptop cart. Again, if anything's missing I'm going to come looking for you.["] So then he gets up, goes back in his seat. He gets up out of his seat, he walked to the front of the classroom. Now, my co-teacher's telling him ["]Kaleel, we're not going to do this. Kaleel, we're not going to do this.["] He pushes past the co-teacher cause she has her hands out like this (indicates). He pushes past her and over her shoulder punches me in the face.

(R.R. at 31a-33a.)

She also testified that after the incident, she sought treatment at Mercy Hospital of Philadelphia where she received seven stitches to her upper lip and Tylenol with codeine for the pain. She also followed up with Employer's panel physicians who prescribed physical therapy and released her to light-duty work. However, because light-duty work is not available for her job, she testified that she has not returned to work. She now undergoes treatment with Dr. Lugiano, a chiropractor, three times a week, as well as Dr. Andrew Lipton (Dr. Lipton) and Dr.

3

Byrne Solberg (Dr. Solberg), who regularly monitor her medical condition and treatment.

Regarding her psychological injuries, Claimant testified that she is now fearful of African American men who look like the student that attacked her. She has nightmares and flashbacks. She does not feel capable of returning to her pre-injury job because she cannot trust any students that come near her and fears turning her back to write on the blackboard. She now sees Dr. Brian S. Raditz, Ed.D. (Dr. Raditz), once per week for mental health therapy, which has helped her condition.

In addition to feeling like an "emotional wreck" (R.R. at 45a), Claimant also has severe daily headaches, pain in her teeth with cold and sensitivity, and pain in her neck. She had no neck injuries or treatment, dental symptomatology or psychological history prior to the attack. Regarding her mouth, Claimant testified that she had to go back to Mercy Hospital because her sutures became infected. She described their removal as "the worst pain in my life . . . ." (R.R. at 36a.) Because she experiences tooth pain on the upper left side of her mouth, she consulted an oral surgeon who did not recommend specific treatment but, rather, advised that her symptoms would dissipate over time.

### III.

### A.

At a subsequent hearing before the WCJ, Claimant testified that she consulted with a plastic surgeon regarding the scar on the upper-left side of her lip, but the surgeon stated that a procedure "will not change the scar. It will always be

4

there." (R.R. at 60a.) Claimant testified that she is self-conscious of her upper lip area and it bothers her when she eats.

Claimant also submitted the deposition testimony of Dr. Lipton, who is board-certified in family medicine and osteopathic neuro-musculoskeletal medicine. Dr. Lipton testified that he is one of Claimant's treating physicians and that Dr. Solberg, who works with Dr. Lipton, initially examined Claimant on January 29, 2015. During that examination:

> Dr. Solberg noted there was some area on the lip that had evidence of recent sutures. [Claimant] had mildly limited range of motion in the cervical spine and tenderness to palpation in cervical spine as well. He said there was mild tenderness to palpation in the thoracic spine and no lumbar spine paraspinal musculature tenderness . . . with full range of motion in the lumbar spine and full reflexes to the upper and lower extremities. And that was the extent of his physical exam.
>
> * * *
>
> His impression was traumatically induced headache and sensitivity to pain in her teeth, cervical trauma, with cervical and upper back sprain, ongoing sleeplessness and some difficulty with mental concentration.

(R.R. at 81a-82a.) Dr. Solberg recommended therapy, injections, medication and an oral surgery consult.

Dr. Lipton first examined Claimant on February 13, 2015, during which Claimant's reported pain level was a seven out of ten; she was going to the chiropractor three times a week. Upon performing a physical exam, Dr. Lipton

5

noticed a scar on Claimant's lip consistent with her history, and that her cervical spine was restricted in all planes of motion, both actively and passively. There were no neurological symptoms from her spine, but she did have hypertonicity and tenderness of palpation, and some restriction in the thoracic spine. A subsequent MRI showed degenerative disc disease in the cervical spine.

Dr. Lipton's diagnosis is work-related "[p]ost-traumatic cervicalgia, cervical disc disease with multilevel disc bulging, cervical radiculitis, headache, dental pain and jaw trauma, and thoracic strain and sprain . . . [as well as] post-traumatic stress disorder from the assault." (R.R. at 90a-91a.) He does not believe that Claimant is physically and/or mentally capable of returning to her prior job duties yet, and recommends light or sedentary work that does not require interacting with many people.

Claimant also submitted the deposition testimony of Dr. Raditz, who is a certified clinical psychologist and first examined Claimant on February 4, 2015. The Board summarized[3] that testimony as follows:

> Dr. Raditz diagnosed Claimant with adjustment disorder with mixed anxiety and depressed mood, as well as pain disorder associated with psychological factors and a general medical condition. (Raditz pp. 15-16). He opined that this diagnosis was the direct result of Claimant's January 7, 2015 work injury. (Raditz p. 16). He further opined

---

[3] We are unable to find in the Certified Record the deposition transcript of Dr. Raditz. While the Reproduced Record provides a deposition transcript taken on August 10, 2015, that testimony relates to an entirely different workers' compensation claim for a different claimant. (*See* R.R. at 148a.) Accordingly, we must look to the summary and findings provided by the WCJ and Board.

6

> Claimant will continue to need treatment for her psychological condition and cannot return to her pre-injury job with Defendant. (Raditz pp. 22-23).

(C.R. Item No. 8.)

Claimant also submitted the independent medical examination (IME) report of Anna Kornbrot, D.M.D., dated September 10, 2015. According to that IME report, Claimant's work injury caused her to have a lip laceration, which requires cosmetic repair, and

> caused her teeth to be concussed and contributed to her need for root canal treatment on tooth number 10. She did have pre-existing periodontal dental issues that may have been exacerbated by the injury but I believe the injury contributed to her tooth problem. As for her jaw pain, she is able to open maximally to within normal limits. She has no deviation of her jaw opening. No joint noises were heard upon opening and closing her jaw. She is apparently getting some physical therapy that includes treatment for her jaw pain and that would likely be all that could be done to address it. From a dental perspective, in my opinion, she should be able to work without restriction.

(R.R. at 169a.)[4]

## B.

Employer submitted the October 5, 2015 deposition testimony of Dr. Gladys Fenichel (Dr. Fenichel), who is board certified by the American Board of

---

[4] The IME report is not contained in the Certified Record.

7

Psychiatry and Neurology. She examined Claimant once on May 26, 2015, and found no objective findings consistent with any type of psychiatric disorder. She further did not see any signs of anxiety or depression, and opined that Claimant did not have any work-related psychiatric disorder that would cause any type of disability or prevent her from returning to work.

Employer also submitted the deposition testimony of Dr. Christian Fras, M.D. (Dr. Fras), who is board certified in orthopedic surgery. He examined Claimant once on May 8, 2015, and opined that Claimant was fully recovered from her work-related orthopedic injuries including contusion, lip laceration and any injuries to her face and neck. He further opined that she required no work restrictions and could return to her pre-injury job without restriction. Claimant required no future medical care for her work injuries.

## IV.

On September 13, 2016, the WCJ issued a Decision and Order granting Claimant's claim petition, in part, but finding that she fully recovered from her physical injuries and did not suffer disabling dental or psychological injuries. The WCJ also denied Claimant's review petition relating to the scar on her lip. Specifically, the WCJ found as follows:

> This Judge finds that Claimant sustained disabling work injuries of headache, cervical sprain and strain, left-sided jaw pain and sensitivity in her upper left central incisor tooth, requiring a root canal on January 7, 2015. . . . Her dental injuries were not disabling at any time. Claimant also suffered work-related adjustment disorder with mixed anxiety and depressed mood, as well as a pain disorder associated with psychological factors and a general medical condition, however her mental injuries were not disabling at

8

any time. Claimant has fully recovered from her headaches and cervical sprain and strain as of the date of Dr. Fras' examination on May 8, 2015.

(C.R. Item No. 5.)

Significantly, the WCJ made the following credibility determinations:

10. Claimant's testimony is **credible and persuasive in part**. Her description of the nature of the incident is not contested. The mechanism of injury is consistent with the nature of her symptoms. **However, this Judge does not find that Claimant suffered any ongoing disability after May 8, 2015.**

11. Dr. Lipton's testimony that Claimant sustained a disabling work injury on January 7, 2015 is found **credible in part**. This Judge rejects Dr. Lipton's diagnosis of post-traumatic cervicalgia, cervical disc disease with multilevel disc bulging, and cervical radiculitis. **However, this Judge finds that any disability that Claimant suffered as a result of the work injury resolved as of May 8, 2015.**

12. Dr. Raditz's testimony that Claimant sustained a mental injury on January 7, 2015 is **accepted in part**. This Judge accepts his diagnosis regarding her mental condition as credible based upon this Judge's own observation of Claimant in the courtroom. **However, this Judge rejects his testimony that Claimant is disabled from returning to work due to her diagnoses. This Judge also rejects his opinion that she is not capable of gainful employment as a teacher due to her mental symptoms.**

13. Dr. Fras' testimony is found **credible and persuasive as to the nature of the injuries sustained, in addition to those found credible as diagnosed by Dr. Lipton.** This Judge finds that Claimant suffered a cervical sprain and strain injury as a result of the work incident, and **that she had fully recovered as of the date of Dr. Fras' examination.**

9

* * *

> 15.  Dr. Fenichel's testimony is **credible in part**.  This Judge finds credible Dr. Fenichel's opinion that Claimant **did not sustain disabling mental injuries as a result of the work injury.**  However, where her testimony otherwise conflicts with that of Dr. Raditz, her testimony is rejected.

(C.R. Item No. 5) (emphasis added).

Claimant appealed the WCJ's determination, and the Board reversed the WCJ's denial of disfigurement and dental benefits.  However, the Board affirmed the WCJ's finding that Claimant fully recovered from her physical injuries and did not suffer a disabling psychological injury because those determinations were grounded in credibility determinations.  Claimant then filed this petition for review.[5]

**V.**

On appeal, Claimant contends that there is not substantial evidence to support the WCJ's determination that she fully recovered from her physical injuries and did not suffer disabling psychological injuries.  According to Claimant, this is because the WCJ arbitrarily and capriciously disregarded her testimony as well as Dr. Lipton's and Dr. Raditz's testimonies and used credibility determinations as "fig leaves to cover instances where a particular outcome or result is the real goal . . . ." (Claimant's Brief at 22.)

---

[5] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether there has been a violation of constitutional rights, whether errors of law have been committed or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence.  *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 652 A.2d 797, 799 (Pa. Cmwlth. 1995).

However, the WCJ did not disregard Claimant's offered testimony, but instead found Employer's offered testimony more credible and persuasive. Specifically, the WCJ made credibility determinations rejecting Dr. Raditz's opinion that Claimant's psychological condition caused her to become disabled and accepted Dr. Fenichel's testimony that Claimant's psychological condition did not cause any disability. The WCJ also rejected Claimant's and Dr. Lipton's testimony regarding the current state of her physical injuries and accepted as credible Dr. Fras' testimony that, within a reasonable degree of medical certainty, those injuries were fully recovered at the time of his examination.

What Claimant is essentially asking us to do is adopt her version of events, which we are not free to do. As we have stated over and over and over again, "[t]he WCJ, as the ultimate fact-finder in workers' compensation cases, 'has exclusive province over questions of credibility and evidentiary weight.'" *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). The WCJ is free to accept or reject the testimony of any witness in whole or in part, including a medical witness. *US Airways v. Workers' Compensation Appeal Board (Johnston)*, 713 A.2d 1192, 1195 (Pa. Cmwlth. 1998). We are bound by these credibility determinations and cannot overturn them on appeal. "Moreover, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *A & J Builders, Inc.*, 78 A.3d at 1238.

Accordingly, the Board's order is affirmed.[6]

_____
DAN PELLEGRINI, Senior Judge

---

[6] Although not raised as a separate issue in her brief or petition for review, several comments by Claimant seem to assert that the WCJ did not issue a reasoned decision because she failed to offer proper justification for her credibility determinations relating to testimony involving Claimant's mental health. While that issue is likely waived because it was not properly raised and developed, the WCJ did issue a reasoned decision. The WCJ credited Claimant's and Dr. Raditz's testimonies regarding her mental condition, but rejected that Claimant suffered an actual disability based on the WCJ's personal observations as well as what she found to be the more credible testimony of Dr. Fenichel, who personally examined Claimant and "noted that Claimant's appearance . . . indicated a level of self-concern and attention that Dr. Fenichel does not see as an indicator of a psychiatric disorder." (R.R. at 18a.) Obviously, this explanation does not leave us imagining "why the WCJ believed one witness over another." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 196 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susette Vandunk,                          :
                    Petitioner            :
                                          :
          v.                              : No. 996 C.D. 2017
                                          :
Workers' Compensation Appeal              :
Board (School District of                 :
Philadelphia),                            :
                    Respondent            :

# **O R D E R**

AND NOW, this 27th day of December, 2017, it is hereby ordered that the order of the Workers' Compensation Appeal Board dated June 22, 2017, in the above captioned matter is affirmed.

_____
DAN PELLEGRINI, Senior Judge